## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| *ANDREW P. FLOOD,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:11-cv-270-DBH* |
| | ) | |
| *MAINE DEPARTMENT* | ) | |
| *OF CORRECTIONS, et al.,* | ) | |
| | ) | |
| *Defendants* | ) | |


### MEMORANDUM DECISION ON MOTION TO SUBSTITUTE AND MOTIONS TO AMEND AND RECOMMENDED DECISION ON MOTIONS TO DISMISS

The plaintiff, a prisoner who is proceeding *pro se*, filed the instant action on July 8, 2011. *See* ECF No. 1.  On September 19, 2011, he notified the court that he intended to amend his complaint before service was made.  *See* ECF No. 5.  By order dated September 23, 2011, I directed that he file his amended complaint no later than October 14, 2011, "given the complexion of Flood's repetitive litigation in this court," and that the amended complaint "include a clear identification of all of the defendants, the legal basis for his federal claims against each defendant, and the nature of the relief that he seeks as to each defendant[,]" enabling the court to screen it pursuant to 28 U.S.C. § 1915(e).  *See* ECF No. 6 at 4.[1]  On October 19,

---

[1] As of September 23, 2011, Flood had filed a total of five cases in this court pertaining to the revocation of his probation in January 2010: two petitions for habeas relief pursuant to 28 U.S.C. § 2254 and two suits pursuant to 42 U.S.C. § 1983, in addition to the instant suit.  *See* ECF No. 6 at 1-2.  He has since filed a sixth case, in the form of a third habeas petition, which I have recommended that the court deny.  *See* ECF No. 4, *Flood v. Barnhart*, No. 1:12-cv-174-DBH.

2011, the plaintiff filed an amended complaint that is the operative complaint in this case. *See* Amended Complaint (ECF No. 11). On October 26, 2011, after a preliminary screening pursuant to 28 U.S.C. § 1915(e), the court ordered that the Amended Complaint be served on the defendants. *See* ECF Nos. 13-14; *see also, e.g., Street v. Fair*, 918 F.2d 269, 271 (1st Cir. 1990) ("Section 1915(d) [now codified at 28 U.S.C. § 1915(e)], applicable only to *in forma pauperis* actions, was designed to screen out baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions under Fed.R.Civ.P. 11.") (citation and internal quotation marks omitted).[2]

Fourteen motions now are pending, all of which have been referred to me:

1.      Three motions to dismiss the operative Amended Complaint, *see* Motion To Dismiss ("State Motion To Dismiss") (ECF No. 26) at 1; Defendant Ann Elizabeth O'Brien's Motion To Dismiss ("O'Brien Motion To Dismiss") (ECF No. 41) at 1; Eastport Motion To Dismiss at 1, and related motions by the Eastport Defendants to substitute the United States as a party with respect to any medical malpractice tort claims, *see* Motion To Substitute (ECF No. 82), and by the plaintiff for discovery related to the Motion To Substitute, *see* Plaintiff's Request for Judicial Review of the Attorney General's Certification on Scope of Employment (ECF No. 87);

2.      Two motions by the plaintiff to amend his complaint, *see* Letter dated January 9, 2012, from Andrew Flood to the court styled as a Motion To Amend Complaint ("First Motion

---

[2] The defendants, apart from the unknown John Doe and Jane Doe, are the Maine Department of Corrections ("MDOC"), Charles O'Roak, and William Love (collectively, the "State Defendants"), as well as Eastport Health Care, Inc. ("Eastport"), Tari Murphy, Ann O'Brien, and Karen Barbee (collectively, the "Eastport Defendants"). *See* Amended Complaint at 1. The plaintiff indicates that he sues the defendants both in their official and individual capacities. *See id.* O'Brien is represented jointly by her own separate counsel and by the United States and Eaton Peabody for various purposes. *See, e.g.*, Motion To Dismiss ("Eastport Motion To Dismiss") (ECF No. 83) at 1 n.1.

To Amend") (ECF No. 36); Plaintiff's Motion for Leave To Amend the Complaint Pursuant to Federal Civil Procedure 15(a)(2) ("Second Motion To Amend") (ECF No. 39);

3.      A motion by the plaintiff for a preliminary injunction, *see* Letter dated December 26, 2011, from Andrew P. Flood to the court, styled as a Motion for a Preliminary Injunction ("P/I Motion") (ECF No. 32), and a related objection by the State Defendants to materials tardily filed without leave of court in support of the P/I Motion, *see* Objection to Memorandum in Support of Injunctive Relief and Attached Exhibits ("P/I Objection") (ECF No. 74);

4.      An additional motion by the plaintiff for discovery, *see* Plaintiff's Request for Discovery in Order To Identify Jane and John Doe Defendants (ECF No. 89); and

5.      Four motions by the plaintiff to seal various documents, *see* ECF Nos. 102, 114, 115, 121.

For the reasons that follow, I deny the Eastport Defendants' motion to substitute, mooting the plaintiff's request for discovery bearing on that motion, recommend that the court grant the defendants' motions to dismiss the operative complaint, and deny the plaintiff's motions to amend that complaint.  If Judge Hornby adopts my recommendation to grant the motions to dismiss, the plaintiff's P/I motion, the State Defendants' objection to materials filed in support of that motion, and the plaintiff's motion for discovery with respect to John and Jane Doe will be rendered moot.  *See Thomas v. Guffey*, 367 Fed. Appx. 957, 960 (10th Cir. 2010) ("The dismissal of the underlying claim render[s] moot the requests for injunctive relief regarding that claim[.]").  Hence, I have not considered those motions.  I will separately rule on the plaintiff's pending motions to seal various filings.

## I.  Motions To Dismiss

## A.  Applicable Legal Standard

The Supreme Court has stated:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the grounds of his
> entitlement to relief requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.  Factual allegations
> must be enough to raise a right to relief above the speculative level.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal punctuation omitted). This standard requires the pleading of "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss under Rule 12(b)(6), a court assumes the truth of all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Román-Oliveras v. Puerto Rico Elec. Power Auth*., 655 F.3d 43, 45 (1st Cir. 2011). Ordinarily, in weighing a Rule 12(b)(6) motion, "a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citation and internal quotation marks omitted).

## B. Factual Background

The operative complaint includes the following relevant factual allegations.[3]

### 1. The MDOC

At all material times, the plaintiff was under the supervision of the MDOC and receiving substance abuse and mental health treatment and counseling from Eastport. Amended Complaint ¶ II(A). The MDOC terminated the plaintiff's probation because he was receiving substance abuse replacement therapy at Arnold Memorial Medical Center and the Discovery House that it disagreed was therapeutic. *Id.* ¶ IV(B). The MDOC did not allow the plaintiff to receive certain medications and limited the providers from whom he could receive care, causing him to sign an exclusive contract with Eastport. *Id.* ¶ IV(C).

The MDOC moved the state to prosecute the plaintiff based on confidential substance abuse and psychiatric information. *Id.* ¶ IV(F). The MDOC disclosed confidential medical, psychiatric, and substance abuse treatment information on its website and in C.O.R.U.S. for any MDOC employee to view. *Id.* ¶ IV(G).[4] The staff has used this information to label the plaintiff "crazy" and "delusional." *Id.* ¶ IV(I). The MDOC used confidential substance abuse treatment information during a classification hearing at the Maine State Prison to decide what programs were available to the plaintiff. *Id.* ¶ IV(H). Because the MDOC security staff has labeled the plaintiff a "med seeker," he has been excluded from medical and mental health treatment and care. *Id.* ¶ IV(J).

---

[3] The First Circuit has instructed that, in reviewing a complaint for sufficiency pursuant to Rule 12(b)(6), a court "should begin by identifying and disregarding statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (citation and internal punctuation omitted). "Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible." *Id.* "If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility." *Id.* (citation and internal quotation marks omitted).
[4] The Amended Complaint does not define "C.O.R.U.S" but does indicate that the C.O.R.U.S. is housed within the MDOC website. *See* Amended Complaint ¶ VI(Y).

### 2. Probation Officer William Love

Probation Officer William Love interrupted several substance abuse treatment programs in which the plaintiff was participating. *Id.* ¶ VI(B). He interfered with a treatment program that the plaintiff was undergoing at Wellsprings in Bangor, Maine. *Id.* ¶ VI(C). He did so to force the plaintiff to move back to Calais, Maine, where Love could obtain more control over him. *Id.* Love felt that the plaintiff would be "unjustly rewarded" if he were allowed to complete probation under Bangor Probation and Parole Officer Candice Keefer in Bangor, Maine. *Id.* ¶¶ VI(C), (I).

Love developed an animus toward the plaintiff as the result of Flood's sister's default on a personal loan obtained from Love's wife, Mona, and a personal relationship Love had with the plaintiff's fiancée. *Id.* ¶ VI(D). Love felt that the plaintiff should "take responsibility" for his sister. *Id.* Love also retaliated against the plaintiff for disagreeing with Love's views on Alcoholics Anonymous ("AA"). *Id.* ¶ VI(E). The plaintiff had informed Love that he suffered from social phobia, making it almost impossible for him to interact in a group setting, and that the views on different religions went against his personal belief in God. *Id.* Love nonetheless directed the plaintiff to attend the group several times a week, telling him that his social phobia was "all in [his] head" and was no excuse. *Id.* Love did not recuse himself from the plaintiff's supervision after conflicts of interest surfaced between himself and the plaintiff. *Id.* ¶ VI(V).

Love released confidential substance abuse treatment information to the public and the courts without the plaintiff's consent. *Id.* ¶¶ VI(F)-(G). Love entered clinical notes of one-on-one sessions into a public hearing without consent. *Id.* ¶ VI(G). Love entered the plaintiff's medical, psychiatric, and substance abuse treatment information into an affidavit that he sent to the courts. *Id.* ¶ VI(X). Love also entered false information into the C.O.R.U.S. in the MDOC

website, including statements pertaining to the plaintiff's substance abuse programs and psychiatric therapy groups, such as a false statement that the plaintiff had failed to attend and gotten "kick[ed] out" of groups in which he was successfully engaged at that time. *Id.* ¶ VI(Y).

Love redisclosed treatment information from the Wellsprings program in Bangor to Eastport in an attempt to discredit the plaintiff. *Id.* ¶ VI(P). Love falsely told Tari Murphy and Ann O'Brien that James Bradney had kicked him out of a "DSAT" program in Bangor. *Id.*[5] Love released court documents, including probation conditions, to Eastport. *Id.* ¶ VI(Q). Love used his influence over Eastport to interfere with the treatment that the plaintiff was receiving there and to gain access to information. *Id.* ¶ VI(W). He influenced Eastport to make the plaintiff submit to weekly blood draws at Calais Hospital. *Id.* He told O'Brien, of Eastport, that the plaintiff was manipulating his urinalysis tests although the plaintiff had never failed such a test. *Id.*

Love used outdated release forms to gain access to documents and information, including the plaintiff's DSAT file at Eastport, that the plaintiff did not give him permission to access. *Id.* ¶ VI(R).

Love called people for whom the plaintiff worked and released privileged information, informing individuals for whom the plaintiff subcontracted that he was taking suboxone, which was part of his substance abuse therapy at Arnold Memorial Medical Center. *Id.* ¶ VI(H). Love has falsely informed people in the community in which the plaintiff grew up that Love sent him back to prison for not providing for his family and neglecting his parental duties. *Id.* ¶ VI(S).

---

[5] The Amended Complaint does not define "DSAT." However, an exhibit provided by the plaintiff in support of his motions for a preliminary injunction and to amend his complaint indicates that the acronym stands for "Differential Substance Abuse Treatment." Exh. 5 (ECF No. 70-10).

During a time that the plaintiff was under Keefer's supervision and not Love's, Love placed a complaint to the Maine Department of Health and Human Services regarding the plaintiff's receipt of benefits.  *Id.* ¶ VI(I).

Love interfered with the plaintiff's relationship with his fiancée, who is the mother of his child, threatening the plaintiff with retaliation for engaging in the relationship because, in Love's view, the plaintiff's fiancée was too good for him, and the plaintiff was going to sabotage her sobriety because of the medications that he was being prescribed.  *Id.* ¶ VI(J).

Love refused to allow the plaintiff to receive treatment for mental health disorders that Love did not believe existed.  *Id.* ¶ VI(K).  He told the plaintiff that, because he was a substance abuse addict, he was not to take any medications for his mental health disorders.  *Id.*  He sought to have the state prosecute the plaintiff for undergoing treatment with which he disagreed.  *Id.* Other individuals on probation who were undergoing the same substance abuse therapy were not treated in this manner.  *Id.* ¶ VI(U).

On several occasions, Love sent the Calais Police Department to homes where the plaintiff was installing floor covering, disrupting the plaintiff's ability to work in the small community in which he lived.  *Id.* ¶ VI(L).  Love threatened the plaintiff with retaliation if he ever brought up the inappropriate things that Love was doing or lodged any complaints against him.  *Id.* ¶ VI(M).  He told the plaintiff that he would be punished if he brought up the relationship that Love and his wife had with the plaintiff's fiancée and would be sent to prison if he mentioned the loan payment on which the plaintiff's sister had defaulted.  *Id.*

After the plaintiff told the court on February 9, 2009, that Love had been acting in a professionally unreasonable manner by interfering with substance abuse treatment, Love told the plaintiff that he had warned him not to bring that up in court and punished him with extra weekly

check-ins, counseling, and AA, and humiliated him at office check-ins. *Id*. ¶ VI(N). The plaintiff was afraid ever to mention the conflict in court again. *Id*. After the plaintiff was arrested and sent to Washington County Jail, Love warned him twice not to bring up any of the conflicts of interest, or he would be punished after he went to prison. *Id*. ¶ VI(O).

### 3.   Probation Supervisor Charles O'Roak

Charles O'Roak, Love's supervising officer, was made aware of misconduct by Love and failed to act. *Id*. ¶ V(A). Love had been removed as Flood's sister's probation officer as a result of a personal conflict of interest. *Id*. O'Roak was made aware of the conflict of interest between the plaintiff and Love in the summer of 2008. *Id*. ¶ V(B). When the plaintiff was under the supervision of Candice Keefer of the Bangor Office of Probation and Parole, the plaintiff informed her of Love's inappropriate interference with his substance abuse therapy and his fear that Love would send him back to prison based on a personal conflict. *Id*. Keefer referred the plaintiff to O'Roak, who told him that there was nothing he could do because Love had the authority to act according to his own beliefs. *Id*. ¶ V(C).

### 4.   Eastport

During intake, the plaintiff informed Eastport that he suffered from bipolar mood disorder and a form of post-traumatic stress disorder, social phobia. *Id*. ¶ VII(C). The plaintiff later was dismissed for an inconsistency in mood and behavior. *Id*. Eastport broke its contract with the plaintiff by allowing Love to interfere with his treatment. *Id*. ¶ VII(D). Eastport released the plaintiff's entire DSAT file to the MDOC and the State of Maine, although Flood never signed any releases for that disclosure and did not have fair warning of that release. *Id*. ¶ VII(F). Eastport did not allow Flood one-on-one treatment, although Flood's disorders are triggered in group settings. *Id*. ¶ VII(G). Eastport disclosed to the MDOC, in order to have the

plaintiff's probation revoked, that he had an "attitude" problem and an "inconsistency in mood." *Id.* ¶ VII(H).  The court gave the plaintiff a five-year sentence.  *Id.*

### 5.  Tari Murphy of Eastport

Murphy of Eastport disclosed confidential substance abuse treatment notes to the MDOC and the State of Maine without the plaintiff's permission.  *Id.* ¶ VIII(B).  On August 23, 2007, Murphy released confidential information to the MDOC in order to institute a violation report to probation.  *Id.*  The plaintiff was sentenced to five years in prison.  *Id.* ¶ VIII(A).[6]  Murphy also disclosed to the court, without the plaintiff's consent, that he was taking suboxone and xanax, which the plaintiff had informed Eastport he was receiving from Arnold Memorial Medical Center.  *Id.* ¶ VIII(C).  She also expressed to the court her opinion of the plaintiff's attitude during group sessions and informed the judge that the plaintiff was a bully and not qualified for substance abuse or psychiatric therapy.  *Id.* ¶ VIII(D).  Murphy falsely told the court that the plaintiff was not involved in any other groups upon his discharge, although he was still attending Arnold Memorial Medical Center, AA, and a Healthways one-on-one group with Sandra Hayward.  *Id.* ¶ VIII(J).  Murphy was aware of all of those other groups.  *Id.*  In response to the plaintiff's statements that he did not believe in group settings and group-oriented religion-based treatment programs, Murphy told the plaintiff that he had a bad attitude toward AA.  *Id.* ¶ VIII(I).

Upon the plaintiff's entry into the Eastport program, he refused to sign release forms for the MDOC to view his treatment at Eastport.  *Id.* ¶ VIII(E).  Murphy admitted, in response to a

---

[6] According to a docket sheet excerpt supplied by the Eastport Defendants, the plaintiff was adjudged by the Maine Superior Court on January 25, 2010, to have violated one or more of the conditions of his probation.  *See* Exh. B (ECF No. 83-2) to Eastport Motion To Dismiss.  The court revoked the order of probation that it had previously entered and ordered the plaintiff to serve five years of the suspended portion of his sentence.  *See id.*  The docket sheet excerpt, part of an official public record, properly is taken into consideration for purposes of the pending motions to dismiss.  *See, e.g., Alternative Energy,* 267 F.3d at 33 (court may consider official public records without converting a Rule 12(b)(6) motion into a motion for summary judgment).

complaint filed against her by the plaintiff, that the plaintiff specifically forbid redisclosure of information to the MDOC, but that she sent it to Love because Love told her it would be a violation of the plaintiff's probation.  *Id.* ¶ VIII(F).

### 6.   Ann O'Brien of Eastport

The plaintiff sought treatment from O'Brien, of Eastport, for a debilitating anxiety disorder.  *Id.* ¶¶ IX(B)-(C).  Love told O'Brien that the plaintiff was somehow manipulating his urinalysis tests and that Love needed her to prove it.  *Id.* ¶ IX(C).  O'Brien forced the plaintiff to undergo weekly blood draws to see if he was substituting his medications.  *Id.* ¶ IX(B).

O'Brien allowed Love to dictate what medications were available to the plaintiff.  *Id.* ¶ IX(D).  She called Love before prescribing medications to see if he approved.  *Id.*  Love is not a medical doctor or educated in medicine.  *Id.*  O'Brien stated that she did this because Probation and Parole had to be in agreement as to what medication was available to the plaintiff.  *Id.*

After the plaintiff discontinued his treatment with O'Brien and Eastport, his entire clinical notes were released to the MDOC without his consent.  *Id.* ¶ IX(E).  He was not told that his in-session clinical records were going to be submitted to public discovery.  *Id.*

### 7.   Karen Barbee of Eastport

Barbee, of Eastport, stated that she disagreed with the substance abuse treatment (methadone) that the plaintiff was receiving from the Discovery House, which, mixed with his prescribed psychiatric medications, "was potentially life threatening."  *Id.* ¶ X(A).  This information was sent to the courts.  *Id.*  Barbee made the plaintiff believe that any disclosures that he signed were to be used in-house only but later released information disclosed while "in session" to the MDOC and the State of Maine, including information to be used against the plaintiff to revoke his probation and send him back to prison for five years.  *Id.* ¶¶ X(B), (D).

Barbee told the court that the plaintiff's irregularity in mood was concerning, despite the fact that he had been prescribed medications under the strict supervision of a medical doctor. *Id*. ¶ X(C).

### C. Discussion

#### 1. State Defendants' Motion

In the Amended Complaint, the plaintiff identifies (i) the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and 42 U.S.C. § 1983 as his grounds for suit against the MDOC, *see id*. ¶ XIII, (ii) 42 U.S.C. § 1986 as his ground for suit against O'Roak, *see id*. ¶ XIV, and (iii) 42 U.S.C. § 1983, 5 M.R.S.A. § 4682, the Maine Tort Claims Act, the ADA, and the Rehabilitation Act as his grounds for suit against Love, *see id*. ¶ XV. He also alleges, in passing in the body of his complaint, that Love violated federal confidentiality laws, specifically, 42 C.F.R. Part 2. *See id*. ¶ VI(F).[7] The plaintiff seeks (i) preliminary and permanent injunctions against the redisclosure by Love and the MDOC of information pertaining to his substance abuse and psychiatric treatment, (ii) compensatory and punitive damages against each defendant, including compensation for business that the plaintiff allegedly lost, and (iii) costs of suit. *See id*. at 15. To the extent that the plaintiff sues Love and O'Roak in their official capacities, he effectively sues the MDOC. *See, e.g.*, *Ruffin v. Brann*, No. CV-09-87-B-W, 2009 WL 3747189, at *3 (D. Me. Nov. 5, 2009). ("A lawsuit against a state official in his or her 'official capacity' is not a suit against the official at all, but rather is a suit against the official's office."). My references to "the MDOC," hence, include Love and O'Roak in their official capacities.

The State Defendants seek dismissal of:

---

[7] The regulations found in 42 C.F.R. part 2 "were enacted pursuant to the provisions of the Drug Abuse Prevention, Treatment, and Rehabilitation Act, 21, U.S.C. § 1175, and were later transferred into the Public Health Service Act, 42 U.S.C. § 290dd-2. *See* 42 C.F.R. § 2.1 and 2.2." *McCloud v. Board of Dirs. of Geary Cmty. Hosp.*, No. 06-1002- MLB, 2006 WL 2375614, at *3 (D. Kan. Aug. 16, 2006) (footnote omitted). I will refer to claims pursuant to those provisions as "Public Health Service Act" claims.

1.       The section 1983 claims against them on the bases that, (i) in the absence of any allegation that the plaintiff's sentence for violating the conditions of probation has been vacated on appeal, state post-conviction review, executive order, or federal habeas corpus, he cannot maintain those claims pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), (ii) any section 1983 claims against the MDOC are barred by sovereign immunity, (iii) any claim for emotional anguish, mental distress, or punitive damages resulting from the conditions of the plaintiff's confinement is barred by his failure to allege that he suffered a physical injury, as required to state a claim pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), and (iv) the facts alleged do not support injunctive relief against the MDOC or Love, *see* State Motion To Dismiss at 7-10;

2.       Disability discrimination claims against them on the grounds that (i) the plaintiff fails to allege sufficient facts to make out a plausible claim that he has a disability or was discriminated against on the basis of a disability, and, (ii) in any event, Love and O'Roak are not subject to suit under Title II of the ADA, *see id*. at 11-13;

3.       Any Public Health Service Act claim on the basis that the act creates no private right of action, *see* Reply to Opposition to Motion To Dismiss ("Dismiss Reply/State") (ECF No. 44) at 3; and

4.       State-law claims on the basis that, if the federal claims are dismissed, the court should decline to exercise its supplemental jurisdiction over them and, alternatively, the Amended Complaint fails to state a claim under Maine law for defamation, violation of medical confidentiality statutes, or violation of the Maine Civil Rights Act, *see* State Motion To Dismiss at 14-17.

I conclude, and recommend that the court find, that the Amended Complaint fails to set forth any plausible claim of entitlement to relief with respect to the plaintiff's federal causes of action pursuant to 42 U.S.C. §§ 1983 and 1986, the ADA, the Rehabilitation Act, and the confidentiality provisions of the Public Health Service Act. Should the court agree that none of the plaintiff's federal claims survives the State Defendants' motion to dismiss, I further recommend that it decline to exercise supplemental jurisdiction over any state-law claims.

### a. Section 1983 Claims

In *Heck*, the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87 (footnote omitted) (emphasis in original). The reasoning of *Heck* has been extended to prisoners' claims for declaratory and injunctive relief as well as for money damages. *See, e.g., Stote v. Bennett*, No. Civ.A. 02-30108-MAP, 2002 WL 32166533, at *4 (D. Mass. Sept. 10, 2003).

I agree with the State Defendants that, "[a]lthough it is not completely clear from the few facts alleged, the gravamen of Flood's complaint appears to be that he was wrongfully imprisoned upon the revocation of his probation caused by the improper actions of Officer Love, as condoned by Love's supervisor, Officer O'Roak, and the MDOC." State Motion To Dismiss

at 7.  A judgment in favor of the plaintiff with respect to the alleged wrongful conduct of Love, O'Roak, and the MDOC leading to the plaintiff's revocation of probation and re-incarceration necessarily would imply the invalidity of his sentence.  *See, e.g., Paris v. Dallas Police Dep't*, No. 3:12-CV-0296-G-BH, 2012 WL 2520779, at *5 (N.D. Tex. June 5, 2012) (rec. dec., *aff'd* June 29, 2012) ("*Heck* applies to both parole and probation revocation.  By claiming that the information contained in the arrest report is false, Plaintiff is challenging the validity of his parole revocation, which was based on this arrest.")  (citations omitted); *Bolden v. Winchester*, Civil Action No. 07-756-SLR, 2008 WL 482471, at *2 (D. Del. Feb. 19, 2008), *appeal dismissed*, 324 Fed. Appx. 146 (3d Cir. 2009) (inmate's claims that he did not receive a fair probation revocation after being wrongly accused of being "dirty" despite completing a drug treatment program were barred by *Heck*); *Hall v. City of Mount Pleasant*, Civil Action No. 5:06cv118, 2006 WL 3759908, at *2-*3 (E.D. Tex. Nov. 8, 2006) (inmate's disclaimer of any challenge to his probation revocation was unavailing when, although he "couched his claim as a Fourth Amendment issue, rather than an overt challenge to the validity of his parole revocation," a judgment in his favor "would necessarily imply that the revocation of his probation was unlawful, and so the rule in *Heck* applies").

The plaintiff does not allege that his probation revocation sentence has been reversed, invalidated, or otherwise called into question.  *See generally* Amended Complaint.[8]  Therefore, his section 1983 and section 1986 claims predicated on conduct culminating in his sentencing and re-incarceration are not cognizable pursuant to *Heck*.[9]

---

[8] Indeed, this court has dismissed four of the five other cases that the plaintiff has filed challenging his probation revocation and re-incarceration, and I have recommended that the court dismiss the fifth.

[9] "Although *Heck* dealt with a 42 U.S.C. § 1983 claim, the reasoning of *Heck* has been applied to 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 claims as well."  *Stubbs v. City of Wilkes-Barre, Pa.*, Civil No. 3:11-CV-00452, 2011 WL 1871391, at *2 (M.D. Pa. Mar. 31, 2011) (rec. dec., *aff'd* May 16, 2011).

To the extent that the plaintiff alleges improper conduct on the part of the MDOC beyond that calling into question his probation revocation, for example, that the MDOC disclosed confidential information on its website that MDOC staff have used to label him "crazy" and "delusional" and to decide, during a classification hearing at the Maine State Prison, which programs would be available to him, *see id.* ¶¶ IV(H)-(I), the MDOC is not, as a matter of law, amenable to suit pursuant to section 1983, whether for damages or declaratory or injunctive relief. *See, e.g., Poirier v. Massachusetts Dep't of Corr.*, 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity regardless of the relief sought. Poirier's argument that she only seeks prospective injunctive relief against the DOC is therefore unavailing.") (citation and internal quotation marks omitted).

The plaintiff's suit against O'Roak amounts to an allegation that O'Roak failed to correct misconduct of Love culminating in the plaintiff's probation revocation. *See* Amended Complaint ¶ V. His claims against O'Roak, accordingly, are barred by *Heck*.

In any event, the plaintiff fails to state a claim for supervisory liability against O'Roak. "As a general matter, liability for public officials under section 1983 arises only if a plaintiff can establish that his or her constitutional injury resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." *Grajales v. Puerto Rico Ports Auth.*, 682 F.3d 40, 47 (1st Cir. 2012) (citation and internal quotation marks omitted). The plaintiff alleges that when he made O'Roak aware, in the summer of 2008, that he and Love had a personal conflict of interest, O'Roak told the plaintiff that there was nothing that he could do. *See* Amended Complaint ¶ V. This allegation, even accepted as true, does not demonstrate that O'Roak condoned or acquiesced in conduct by Love amounting to a constitutional violation.

16

The plaintiff's claims against Love, as well, primarily involve conduct integral to the revocation of the plaintiff's probation, including allegedly interfering with mental health and substance abuse treatment, wrongly obtaining confidential treatment information, and disclosing confidential or false information to Eastport and the court. *See id*. ¶ VI.  Any section 1983 claim predicated on such conduct is barred by *Heck*.

The Amended Complaint can be construed to allege certain conduct by Love other than that integral to, and culminating in, the plaintiff's probation revocation; notably, that, as a result of a personal vendetta, Love also disclosed confidential and/or false information to unnamed persons in the community and to the MDOC, which used it against the plaintiff subsequent to his re-incarceration, and that Love interfered with the plaintiff's relationship with his fiancée.  *See id*. ¶¶ VI(H), (J), (S), (V), (Y).  However, the plaintiff identifies no rights secured by the federal constitution or created by federal statute that were transgressed by this alleged misconduct.  *See generally id*.; *see also, e.g.*, *Mullenbach v. Gardner*, No. 4:10-CV-00418-EJL-MHW, 2012 WL 693040, at *5 (D. Idaho Feb. 9, 2012) (rec. dec., *aff'd* Mar. 1, 2012) ("To state a claim under 42 U.S.C. § 1983, a plaintiff must allege four elements: (1) a violation of rights protected by the Constitution, or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law.") (citation and internal quotation marks omitted).[10]

---

[10] My research indicates that the plaintiff's allegations that Love spread falsehoods, for example, that he entered false information in the MDOC website, *see* Amended Complaint ¶ VI(Y), and falsely informed people in the community that the plaintiff was sent back to prison for not providing for his family and neglecting his parental duties, *see id*. ¶ VI(S), do not implicate federal constitutional rights redressable through section 1983.  *See, e.g.*, *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011) (noting that defamation is a state cause of action and that, although U.S. Supreme Court caselaw has "placed constitutional limits on state libel claims, it did not itself create a federal cause of action for libel") (citation and internal quotation marks omitted); *Calhoun v. Grant*, No. 11-60399-CIV-UNGARO, 2011 WL 1674990, at *2 (S.D. Fla. Mar. 29, 2011) (rec. dec., *aff'd* May 3, 2011) ("Although libel is actionable under the laws of most states, it is not a constitutional deprivation that may be raised in a § 1983 action, even against a state actor.").

For these reasons, none of the plaintiff's section 1983 claims against the State Defendants survives their motion to dismiss.

### b.  ADA, Rehabilitation Act Claims

The First Circuit has observed:

> Congress enacted the ADA to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. Title I of the ADA prohibits discrimination in employment.  Title III prohibits discrimination in access to public accommodations like hotels, restaurants, and theaters.  Title II, the provision at issue here, prohibits discrimination against persons with disabilities by public entities and is modeled on § 504 of the Rehabilitation Act . . . .  In applying Title II, therefore, we rely interchangeably on decisional law applying § 504.

*Parker v. Universidad de P.R.*, 225 F.3d 1, 4 (1st Cir. 2000) (citations, footnotes, and internal quotation marks omitted).

The State Defendants reasonably construe the Amended Complaint as implicating Title II of the ADA insofar as it pertains to them.  *See* State Motion To Dismiss at 11.[11]  To prevail on a disability discrimination claim pursuant to Title II of the ADA, "a plaintiff must establish: (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."  *Id.* at 5 (citation and internal quotation marks omitted).

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities" of an individual.  42 U.S.C. § 12102(1)(A).  "A 'substantial limitation' is one that is permanent or long-term."  *Faiola v. APCO Graphics, Inc*., 629 F.3d 43, 47

---

[11] The Amended Complaint indicates that no ADA or Rehabilitation claim is brought against O'Roak.  *See* Amended Complaint ¶ XIV.

(1st Cir. 2010) (citation and internal quotation marks omitted).  "Pursuant to the ADA regulations, a person must be unable to perform, or significantly restricted in the performance of, a major life activity that an average person in the general population can perform."  *Id*. at 48.

As the State Defendants argue, to the extent that the plaintiff brings an ADA or Rehabilitation Act claim against Love in his individual capacity, it must be dismissed.  This court, among others, has held that there is no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act.  *See DeCotiis v. Whittemore*, 842 F. Supp.2d 354, 363 n.5 (D. Me. 2012).[12]

To the extent that the plaintiff sues the MDOC pursuant to the ADA and the Rehabilitation Act, he fails to state a plausible claim of entitlement to relief for at least two independent reasons.  First, the Amended Complaint is devoid of any factual allegations regarding the manner in which the plaintiff's impairments substantially limit a major life activity.  *See generally* Amended Complaint.  Second, even taking all factual allegations as true, the plaintiff does not make out a plausible claim that he was denied programs or services on account of any disability.

The plaintiff alleges, in relevant part, that the MDOC terminated his probation because he was receiving substance abuse replacement therapy with which it disagreed and that it has excluded him from medical and mental health treatment, presumably since his re-incarceration, because members of the MDOC security staff have labeled him a "med seeker."  First Amended Complaint ¶¶ IV(B)-(C).

To the extent that these allegations are based on Love's alleged misconduct, the plaintiff attributes that misbehavior to personal animus based on conflicts of interest regarding Love's sister and fiancée, *see id*. ¶¶ VI(D), (M), (V), tending to undercut any claim of disability-based animus.

---

[12] Courts have held that plaintiffs may sue individual defendants *in their official capacities* for prospective injunctive relief pursuant to Title II of the ADA and/or the Rehabilitation Act.  *See, e.g., Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1188-89 (9th Cir. 2003).  However, as noted above, a lawsuit against an individual in his or her official capacity is a lawsuit against that person's office, *see Ruffin*, 2009 WL 3747189, at *3, in this case, the MDOC.

The plaintiff also alleges that Love (i) disbelieved his claim that he had a social phobia, as a result of which Love directed him to participate in group treatment, *see id.* ¶ VI(E), (ii) refused to allow him to receive treatment for mental health disorders that Love did not believe existed, *see id*. ¶ VI(K), (iii) told him that, because he was a substance abuse addict, he was not to take any medications for his mental health disorders, *see id*., and (iv) sought to have the state prosecute him for undergoing treatment with which he (Love) disagreed, *see id*.  He asserts that other individuals on probation who were undergoing the same substance abuse therapy were not treated in that manner.  *See id*. ¶ VI(U).

Yet, to the extent that the plaintiff alleges that MDOC or Love denied him access to preferred treatment or programs because they did not believe that he had an underlying disability warranting such treatment, that conduct did not amount to discrimination based on a real or perceived disability. To the contrary, the MDOC and Love allegedly denied such access because they did not believe that the plaintiff had the disability in question (for example, social phobia).

To the extent that the plaintiff alleges that the MDOC and Love denied him programs or services because they perceived him as a "med seeker" or a substance abuse addict, the Amended Complaint is devoid of factual allegations necessary to make out a claim on that basis pursuant to the ADA or the Rehabilitation Act in a prison/probation context.

"Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA." *Kula v. Malani*, 539 F. Supp.2d 1263, 1268 (D. Haw. 2008) (citation and internal quotation marks omitted).  "The ADA protects qualified individuals who: (1) have successfully completed a supervised drug rehabilitation program and are no longer using illegal drugs; (2) are participating in a supervised drug rehabilitation program and are no longer using illegal drugs; and (3) are erroneously regarded as using drugs when they are not."  *Id*. (citations omitted).

In *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002), the United States Court of Appeals for the Ninth Circuit held that a parole board may not categorically exclude a class of disabled people from parole based on disability any more than it may categorically exclude African-Americans from

consideration for parole because of their race.  *See Thompson*, 295 F.3d at 898.  However, a parole board or prison administrators may take an individual's disability into account in determining his or her suitability for parole or conditions of jail confinement without running afoul of the ADA.  *See, e.g., Kula*, 539 F. Supp.2d at 1269 ("Just as *Thompson* permits prison officials to consider an inmate's propensity to commit crime as a result of disability in denying parole, Defendants were free to consider Plaintiff's admitted irrational and unstable behavior in determining whether he was qualified to participate in a drug rehabilitation program [while in prison].").

The well-pleaded factual allegations of the Amended Complaint indicate, in effect, that Love and the MDOC made individualized assessments of the appropriateness of various treatments for him, the continuation of his probation, and his classification upon re-incarceration, taking into account his history of substance abuse and/or an allegedly erroneous perception of ongoing substance abuse.  *See, e.g*., Amended Complaint ¶¶ VI(C), (J) & VI(K), (T), (U), (W).  That does not amount to a transgression of the ADA or the Rehabilitation Act.  *See, e.g., Thompson*, 295 F.3d at 898 n.4 ("The parole board claims to have and undeniably does have legitimate penological interests in considering the plaintiffs' substance abuse backgrounds during the individualized inquiry for parole suitability.  We hold only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories."); *Kula*, 539 F. Supp.2d at 1269 ("The policy considerations underlying *Thompson*'s application in the parole setting are equally relevant here.  The court is mindful that prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security, and

that the judiciary is ill equipped to deal with difficult issues of prison administration.") (citations and internal punctuation omitted).

For these reasons, the Amended Complaint fails to state a claim against the MDOC or Love of violation of the ADA or the Rehabilitation Act.

### c.   Claim Pursuant to Public Health Service Act

The plaintiff also alleges, within the body of his Amended Complaint, that Love violated 42 C.F.R. Part 2, *see* Amended Complaint ¶ VI(F), which contains regulations authorized by the Public Health Service Act, 42 U.S.C. § 290dd-2, bearing on the disclosure of drug abuse patient records, *see* 42 U.S.C. § 290dd-2; 42 C.F.R. § 2.1.  Nonetheless, as the State Defendants point out, *see* Dismiss Reply/State at 3, three United States Circuits Courts of Appeals have held that 42 U.S.C. § 290dd-2 creates no private right of action, *see Doe v. Broderick*, 225 F.3d 440, 447-49 (4th Cir. 2000); *Chapa v. Adams*, 168 F.3d 1036, 1038 (7th Cir. 1999); *Ellison v. Cocke County, Tenn.*, 63 F.3d 467, 471-72 (6th Cir. 1995).  In *Briand v. Lavigne*, 223 F. Supp.2d 241 (D. Me. 2002), this court deemed those precedents persuasive and followed them, dismissing a similar claim pursuant to Rule 12(b)(6) on that basis.  *See Briand*, 223 F. Supp.2d at 250-51.  For that reason, in invoking 42 C.F.R. Part 2, the plaintiff fails to state a claim as to which relief can be granted.

### d.   State-Law Claims

The State Defendants argue that, if the court dismisses the plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over his state claims.  *See* State Motion To Dismiss at 14.  They argue, in the alternative, that Amended Complaint fails to state a claim with respect to the state-law causes of action.  *See id.* at 15-17.  I recommend that, if the court agrees that the federal claims in the Amended Complaint must be dismissed, it decline to exercise

supplemental jurisdiction over the plaintiff's remaining state-law claims. *See Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 191 (1st Cir. 2011) ("When a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice.").

### 2.  Eastport Defendants' Motions[13]

The Amended Complaint identifies the plaintiff's grounds for suit against all of the Eastport Defendants as the ADA, the Rehabilitation Act, the Maine Health Security Act, 5 M.R.S.A. § 4682, and the Maine Tort Claims Act. *See* Amended Complaint ¶¶ XVI-XIX. The plaintiff seeks compensatory and punitive damages and his costs of suit from each of the Eastport Defendants. *See id.* at 15.

O'Brien seeks dismissal of all claims against her on the bases that (i) the plaintiff's state-law tort claims fail as a matter of law, (ii) to the extent that the court finds that the plaintiff properly pleads any of those claims, it should decline to exercise supplemental jurisdiction over them, (iii) the plaintiff's civil rights claims pursuant to the Maine Civil Rights Act and 42 U.S.C. § 1983 fail as a matter of law, and (iv) the plaintiff's claims pursuant to the ADA and the Rehabilitation Act fail as a matter of law. *See* O'Brien Motion To Dismiss at 4-11.

The Eastport Defendants move to substitute the United States as the defendant for any medical malpractice tort claims in the case, *see* Motion To Substitute at 1, and seek the dismissal of all claims against them on the bases of (i) lack of jurisdiction over any medical malpractice tort claims against the United States, (ii) failure to state a tort claim under the Maine Tort Claims

---

[13] On August 13, 2012, the plaintiff filed a surreply with respect to the Eastport Defendants' motion to dismiss. *See* ECF No. 126.  The filing of this document without leave of court in itself warrants its disregard.  In any event, nothing stated therein alters my recommendation that the court grant the Eastport Defendants' motion.

Act or the Maine Health Security Act, (iii) failure to state a claim of privacy violation pursuant to possibly applicable federal or state law, (iv) failure to state a claim pursuant to the ADA and the Rehabilitation Act, (v) failure to state a civil rights claim pursuant to 42 U.S.C. § 1983 or the Maine Civil Rights Act, and (vi) failure to state a claim pursuant to the Maine Constitution, *see* Eastport Motion To Dismiss at 5-22. They also argue that the court should dismiss (i) any contract claim, (ii) any claim for punitive damages, and (iii) any claim for injunctive relief against them. *See id*. at 22-24.[14]

To the extent that the plaintiff sues O'Brien, Murphy, and Barbee in their official capacities, he effectively sues Eastport. *See, e.g.*, *Ruffin*, 2009 WL 3747189, at *3. My references to "Eastport," hence, include O'Brien, Murphy, and Barbee in their official capacities.

I conclude, as I did with respect to the State Defendants' motion to dismiss, that the Amended Complaint fails to state a viable federal claim. Therefore, I recommend that the court grant the Eastport Defendants' motion to dismiss and, in the absence of a viable federal claim, decline to exercise supplemental jurisdiction over the plaintiff's state-law claims.

### a. Medical Malpractice Tort Claims

In moving to substitute the United States as a party, the Eastport Defendants argue that "substitution is appropriate because Flood appears to have asserted various medical malpractice tort claims against Barbee, Murphy, and O'Brien, who were acting within the scope of their employment with Eastport, a 'deemed' health center" for purposes of the Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA"), codified at 42 U.S.C. § 233. Motion To Substitute at 7; *see also id*. at 5. The Eastport Defendants note that, "for those claims, Flood's

---

[14] The Eastport Defendants note that, to the extent that their arguments overlap with those made by O'Brien, O'Brien asks the court to treat her separate brief as her motion on those points and, to the extent that the Eastport Defendants cover claims not contemplated in O'Brien's motion, the court treat the Eastport Defendants' motion as O'Brien's motion as to those issues. *See* Eastport Motion To Dismiss at 1 n.1.

exclusive remedy is against the United States pursuant to the [Federal Tort Claims Act]." *Id.* at 8.

Flood opposes the motion to substitute on the basis that the Eastport Defendants misconstrue his claims for retaliation, deliberate indifference, and discrimination as medical malpractice tort claims. *See* Plaintiff's Opposition to Defendants['] Motion To Substitute ("Substitute Opposition") (ECF No. 86) ¶¶ 1-6. In their reply brief, the Eastport Defendants agree that, because the plaintiff disavows that he brings any tort claim in this case, there is no need for substitution, and the United States should not be a party, with the caveat that "in the event the Court were to determine that the Plaintiff actually does assert a tort claim (despite Plaintiff's representations and despite the legal labels), then substitution would be appropriate[.]" Reply to Response to Motion To Substitute (ECF No. 116) at 2 & n.2.

"[T]he plaintiff is both the author and the master of its complaint[,]" and, as such, "has the power to decide what law it will rely upon." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 93 (1st Cir. 2008) (citations and internal punctuation omitted). This "principle extends to a plaintiff's decision as to which causes of action to bring and what jurisdictional arguments to press." *Id.* Although the plaintiff in this case proceeds *pro se*, his arguments against the Motion To Substitute constitute a knowing disavowal of any medical malpractice claims for the purpose of blunting the force of that motion. *See, e.g.*, Substitute Opposition ¶¶ 1-5.

The plaintiff having effectively waived any medical malpractice tort claims, the Motion To Substitute is denied, and the plaintiff's motion for discovery relating to the Motion To Substitute, *see* ECF No. 87, is mooted.

### b.  Presumed Section 1983 Claims

As the Eastport Defendants observe, *see* O'Brien Motion To Dismiss at 8; Eastport Motion To Dismiss at 17-18, although the Amended Complaint does not identify section 1983 as a basis for the plaintiff's claims against them, it contains language that might be construed to assert a claim pursuant to 42 U.S.C. § 1983 for deliberate indifference to a serious medical need, in violation of the Eighth Amendment, *see* Amended Complaint ¶¶ VII(E), IX(B).

As noted above, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege four elements: "(1) a violation of rights protected by the Constitution, or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Mullenbach*, 2012 WL 693040, at *5 (citation and internal quotation marks omitted). "Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." *Id.* (citations and internal quotation marks omitted).

The Eastport Defendants seek dismissal of any section 1983 claim against them on three alternative bases: that (i) they were not state actors but, rather, a private entity and its employees, (ii) the plaintiff was on noncustodial probation at the time he received care from them and, hence, was entitled to choose his own health care, and (iii) the plaintiff does not identify a serious medical need to which they allegedly were indifferent. *See* O'Brien Motion To Dismiss at 8-10; Eastport Motion To Dismiss at 17-20.

I agree that, on any of these three bases, the Amended Complaint fails to state a plausible claim for relief pursuant to section 1983.

"Ordinarily, a non-governmental organization . . . is not subject to § 1983 claims." *Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012). "In some circumstances, though, the conduct of a private party may be fairly attributed to the State, and therefore may constitute

action under color of state law." *Id.* (citation and internal punctuation omitted). "These circumstances are rare, and the plaintiff bears the burden of proving that a private party's acts constitute state action." *Id.* (citations omitted).

Neither the receipt of federal funding nor a designation as a federally qualified health care center suffices to cause an entity or its employees to be state actors for purposes of section 1983. *See, e.g., Mele v. Hill Health Ctr.*, 609 F. Supp.2d 248, 257 (D. Conn. 2009) ("The mere fact that [clinics] receive federal funding, and may receive state funding, does not necessarily make [them] a state actor.").

The plaintiff correctly notes that "[p]rivate person[s] may be acting under color of state law when conspiring with state officials to violate others' constitutional rights." Plaintiff's Response/Objection to Defendants['] Motion To Dismiss ("Dismiss Opposition/Eastport") (ECF No. 120) ¶ 50; *see also, e.g., Whitaker v. Sheild*, Civil Action No. 4:05cv130, 2006 WL 1321481, at *7 (E.D. Va. May 3, 2006) ("[A] private individual may be subject to liability under Section 1983 if he willfully collaborates with an official state actor in the deprivation of a federal right."). However, "to state a claim for civil conspiracy under section 1983, a plaintiff must make something more than a naked assertion of conspiracy between a state actor and private parties." *Id.* (citation and internal quotation marks omitted).

The plaintiff alleges, in relevant part, that (i) Love used his influence over Eastport to interfere with the plaintiff's treatment there, including gaining access to the plaintiff's confidential information and influencing Eastport to force the plaintiff to submit to weekly blood draws, *see* Amended Complaint ¶ VI(W), (ii) Eastport allowed Love to manipulate his treatment, *see id.* ¶¶ VII(D)-(E), and (iii) O'Brien acted as a "prosecutor" for Love rather than a mental health nurse, forcing the plaintiff to undergo weekly blood draws to detect whether he was

27

substituting his medications and allowing Love to dictate what medications were available to the plaintiff, *see id*. ¶¶ IX(B), (D).

Yet, for two reasons, he fails to state a plausible claim of a conspiracy between Love and O'Brien or Eastport to deprive him of a federal right. First, as discussed below, he fails to adequately allege a claim of violation of his Eighth Amendment rights. Second, some degree of collaboration between Love and the Eastport Defendants was contemplated by the plaintiff's conditions of probation. *See* Conditions of Probation ("Probation Conditions"), Exh. A (ECF No. 83-1) to Eastport Motion To Dismiss (directing that the plaintiff undergo substance abuse and psychological counseling/treatment "to the satisfaction of the probation officer" and "consent to the release of any counseling/treatment information to [his] probation officer, the district attorney and the court"). Accepting, for purposes of the motions to dismiss, that Love did direct O'Brien to force the plaintiff to submit to weekly blood draws for the purpose of detecting any substitution of medications and that O'Brien complied – the only relevant concrete conduct alleged – such conduct appears to have comported with the Probation Conditions.[15]

In any event, the plaintiff does not state a cognizable Eighth Amendment claim because he was no longer in custody, but instead on probation, when the Eastport Defendants treated him. In *Luna v. Weiner*, No. Civ.A. 05-2298, 2006 WL 1517747 (D.N.J. May 23, 2006), a parolee made claims similar to those of the plaintiff against a social worker whose therapy sessions the

---

[15] The plaintiff's Probation Conditions, contained within an official public record, properly are taken into consideration for purposes of the Eastport Defendants' motions to dismiss. *See, e.g., Alternative Energy*, 267 F.3d at 33 (court may consider official public records without converting a Rule 12(b)(6) motion into a motion for summary judgment). The plaintiff protests the Eastport Defendants' reliance on his Probation Conditions on the bases that the Maine Superior Court's extension of those conditions past April 7, 2009, was illegal and that he received no notice of the new, illegal conditions of probation set on February 9, 2009. *See* Dismiss Opposition/Eastport ¶¶ 25-36, 66. As the Eastport Defendants rejoin, *see* Defendants' Reply Memorandum in Support of Their Motion To Dismiss ("Dismiss Reply/Eastport") (ECF No. 125) at 3-4, these conclusory allegations do not suffice to call into question the Maine Superior Court's presumptively valid order.

Parole Board assigned him to attend. *See Luna*, 2006 WL 1517747, at *1 (parolee alleged that he had not benefited from therapy, had not received needed medications, and had been harassed by social worker). The court held that his Eighth Amendment claim against the social worker foundered for several reasons, among them his failure to "demonstrate that he was in the *physical* custody of the government[.]" *Id*. at *3 (emphasis in original). The court reasoned: "As a parolee, [Luna] had the freedom to exercise normal responsibility for his own welfare, and could have secured any medical attention of his choosing." *Id*. at *4 (citation and internal quotation marks omitted). It concluded: "Once the plaintiff walked beyond the walls of the prison in which he was being held, he regained his ability to care for himself and moved beyond the factual context of his 'cruel and unusual punishment' claims before this Court about medical care." *Id*.

Other courts likewise have held that an individual who is not "in custody," including a probationer or parolee, cannot state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See, e.g., Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987) ("[T]he eighth amendment prohibition against cruel or unusual punishment is not applicable to cases in which the plaintiffs were not in custody as a result of having been convicted of a crime.") (footnote omitted); *McGhie v. Main*, No. 11-CV-3110 (NGG)(JO), 2011 WL 4852268, at *5 (E.D.N.Y. Oct. 12, 2011) ("McGhie was not incarcerated or institutionalized when, as he alleges, he was deprived of necessary psychiatric care. Though he was on supervised release, and though the Probation Department had previously been providing him with necessary care, he was, upon the cessation of that care, free to find treatment on his own. . . .  The fact that such psychiatric care was a condition of McGhie's supervised release does not alter the analysis."); *Spano v. Satz*, No. 09-60255-CIV., 2011 WL 1303147, at *8 (S.D. Fla. Mar. 31, 2011) ("In the

instant case, Plaintiff was no longer 'in custody' after she was released from the Jail into the Community Control Program.  Accordingly, the Court finds that the Eighth Amendment was not applicable here and thus Defendant [Community Control Officer] owed Plaintiff no Eighth Amendment duty.").  This caselaw is persuasive, and is dispositive of the plaintiff's section 1983 claims against the Eastport Defendants.[16]

Finally, even assuming *arguendo* that the plaintiff was "in custody" for purposes of his Eighth Amendment claim, he fails to allege that the Eastport Defendants were deliberately indifferent to a serious medical need.  "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).  "[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation."  *Ruiz-Rosa v. Rullán*, 485 F.3d 150, 156 (1st Cir. 2007).

The plaintiff alleges, in relevant part, that (i) Eastport excluded him from meaningful therapy and allowed the MDOC to manipulate the treatment available for his mental health disabilities, *see* Amended Complaint ¶¶ VII(A), (E), (ii) O'Brien acted as a "prosecutor" for Love by arranging for weekly blood draws to check whether he was substituting his medications and allowing Love to dictate the medications available to him and was "deliberately indifferent to his well-being," *see id.* ¶ IX(B), and (iii) Barbee failed to provide him with an environment conducive to his well-being, *see id.* ¶ X(B).  These largely conclusory allegations are not enough

---

[16] The plaintiff disputes that he was free, while on probation, to choose where to seek medical treatment or counseling.  *See* Dismiss Opposition/Eastport ¶ 60.  Yet, Love's directive that the plaintiff receive substance abuse and mental health treatment at Eastport did not render the plaintiff "in custody" for purposes of his Eighth Amendment claim.  *See, e.g., Luna*, 2006 WL 1517747, at *3-*4; *McGhie*, 2011 WL 4852268, at *5.

to identify a "serious medical need" to which the Eastport Defendants were indifferent.  They reflect, at most, a disagreement as to the appropriate course of treatment, falling short of stating a claim for a constitutional violation.

On these bases, the Amended Complaint fails to state a plausible claim for relief against the Eastport Defendants pursuant to section 1983.

### c.  ADA, Rehabilitation Act Claims

O'Brien seeks dismissal of the plaintiff's claims pursuant to Title II of the ADA and the Rehabilitation Act on three alternative grounds: that (i) he does not plead that she excluded him from services on the basis of any articulated disability, at most alleging a malpractice claim disputing her treatment decisions, (ii) he does not allege that he was discriminated against by a public entity, and (iii) there is no individual liability for violations of Title II of the ADA.  *See* O'Brien Motion To Dismiss at 10-11.  She also seeks dismissal of any claim against her pursuant to Title III of the ADA on the basis that, because the plaintiff is no longer in her care or that of Eastport, he faces no threat of imminent harm requiring injunctive relief, the only proper remedy under Title III.  *See* Defendant Ann Elizabeth O'Brien's Reply Memorandum of Law in Support of Motion To Dismiss ("Dismiss Reply/O'Brien") (ECF No. 73) at 4 n.2.

The Eastport Defendants argue that the plaintiff fails to state a claim for relief under the ADA because, (i) for purposes of both Titles II and III, he fails to allege facts sufficient to establish that he has a disability within the meaning of the ADA, (ii) for purposes of Title II, he fails to allege that Eastport is a public entity, and (iii) individuals are not subject to suit pursuant to Title II of the ADA.  *See* Eastport Motion To Dismiss at 14-17.

The Eastport Defendants correctly point out that the Amended Complaint fails to state a claim against O'Brien, Murphy, or Barbee in their individual capacities pursuant to Title II of the

31

ADA or section 504 of the Rehabilitation Act.  *See DeCotiis*, 842 F. Supp.2d at 363 n.5.  The

Amended Complaint also fails to state a claim against any of the Eastport Defendants pursuant to

Title III.  As O'Brien argues, *see* Dismiss Reply/O'Brien at 4 n.2, "money damages are not an

option for private parties suing under Title III of the ADA[,]" *Goodwin v. C.N.J., Inc*., 436 F.3d

44, 50 (1st Cir. 2006).  The plaintiff does not request any form of relief other than money

damages against the Eastport Defendants.  *See* Amended Complaint at 15.  In any event, even if

the plaintiff requested injunctive relief, his claim would fail.  He has been discharged from the

care of the Eastport Defendants and does not indicate that he is likely ever to seek or receive care

from any of them again.  *See, e.g*., Amended Complaint ¶ IX(E).  Accordingly, he states no claim

for injunctive/prospective relief against them.  *See, e.g., Dudley v. Hannaford Bros. Co*., 333

F.3d 299, 305 (1st Cir. 2003) ("recent Title III cases have required plaintiffs to show a real and

immediate threat that a particular (illegal) barrier will cause future harm"); *Louisiana Counseling*

*& Family Servs. Inc. v. Mt. Fuji Japanese Rest*., Civil Action No. 08-6143, 2011 WL 3273548,

at *4 (D.N.J. July 27, 2011) ("A plaintiff has standing to seek injunctive relief under Title III

only if the plaintiff has sufficiently demonstrated a past injury in the form of ADA

discrimination and the likelihood that the injury will be repeated when the plaintiff returns to the

place of discrimination.").

   To the extent that the plaintiff sues Eastport pursuant to Title II of the ADA, he fails to

state a claim with respect to which relief can be granted because the allegations of the Amended

Complaint do not indicate that Eastport is a "public entity."  *See Parker*, 225 F.3d at 5 (to prevail

on claim pursuant to Title II of the ADA, a plaintiff must establish, *inter alia*, "that he was either

excluded from participation in or denied the benefits of some public entity's services, programs,

or activities or was otherwise discriminated against").  This court has concluded that a contractor

hired to provide medical services to inmates was not, as a matter of law, a public entity for purposes of Title II of the ADA. *See Wynott v. Correctional Med. Servs., Inc*., Civil No. 08-61-PS, 2008 WL 2061385, at *2 (D. Me. May 13, 2008). Eastport, which the Amended Complaint indicates was merely treating the plaintiff at Love's direction while the plaintiff was on probation, is even further removed from public entity status.

I am mindful that the Rehabilitation Act does permit suit against entities receiving federal financial assistance. *See, e.g., Rowe v. Aroostook Med. Ctr*., No. 1:09-cv-182-DBH, 2010 WL 3283065, at *9 (D. Me. Aug. 17, 2010) (rec. dec., *aff'd* Sept. 28, 2010). However, the Amended Complaint does not allege that Eastport receives such assistance. *See* Amended Complaint ¶¶ III, VI. Hence, it fails to state a claim against Eastport pursuant to the Rehabilitation Act.

In any event, as the Eastport Defendants alternatively argue, *see* Eastport Motion To Dismiss at 16, one cannot glean from the well-pleaded facts of the Amended Complaint that the plaintiff had a "disability" for purposes of Titles II and III of the ADA or the Rehabilitation Act. The Amended Complaint is devoid of any allegation regarding the manner in which the plaintiff's impairments substantially limit a major life activity. For that reason alone, the plaintiff's ADA and Rehabilitation Act claims against all of the Eastport Defendants are subject to dismissal.

### d.  Presumed HIPAA Claim

The Eastport Defendants next seek dismissal of any privacy violation claim premised on the federal Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320 *et seq*., on the basis that HIPAA does not create a private right of action. *See id.* at 10. They are correct. *See Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009). Thus, any presumed HIPAA claim fails as a matter of law.

### e.   Presumed Public Health Service Act Claim

Nor can the plaintiff state a claim with respect to any presumed cause of action pursuant to the Public Health Service Act for privacy violations.  As noted above, that act, as well, confers no private right of action.  *See Briand*, 223 F. Supp.2d at 250-51.

### f.   State-Law Claims

O'Brien requests that the court decline to exercise supplemental jurisdiction over the plaintiff's state-law claims only to the extent that it finds that the plaintiff states a claim with respect to one or more of them.  *See* O'Brien Motion To Dismiss at 7.  The Eastport Defendants take no position on whether the court should decline to exercise supplemental jurisdiction over the plaintiff's state-law claims, simply arguing that such claims fail on the merits.  *See* Eastport Motion To Dismiss at 7-9, 13-14, 20-23.   However, consistent with my recommendation regarding the State Defendants' motion to dismiss, in view of the early stage of this litigation, I recommend that the court decline, without analysis of the merits of the state-law claims, to exercise supplemental jurisdiction over them.  *See, e.g., Ramos-Echevarría*, 659 F.3d at 191.

## II.  Motions To Amend

### A.  Applicable Legal Standards

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend should be granted in the absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The First Circuit has explained:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . .  As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting.  Scheduling orders, for example, typically establish a cut-off date for amendments (as was apparently the case here).  Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b).  This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.  Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, internal quotation marks, and footnotes omitted).

No scheduling order is in place in the instant case.  Hence, the liberal default rule applies. The State Defendants and O'Brien argue that the motions to amend nonetheless should be disallowed on the basis, *inter alia*, that the proposed amendments would be futile.  *See* Supplemental Opposition to Motion To Amend ("State Opposition/Amend") (ECF No. 61) at 1-2; Defendant Ann Elizabeth O'Brien's Opposition to Plaintiff's Proposed Second Amended Complaint ("O'Brien Opposition/Amend") (ECF No. 76) at 3-5.[17]  An amendment is futile where "the complaint, as amended, would fail to state a claim upon which relief could be granted."  *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996).  "In assessing futility, the district court must apply the standard which applies to motions to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)."  *Adorno v. Crowley Towing & Trans. Co.,* 443 F.3d 122, 126 (1st Cir. 2006).[18]

---

[17] In their reply memorandum in support of their motion to dismiss, the Eastport Defendants also argue that the plaintiff's proposed amendments, as discussed in his opposition to that motion, would be futile.  *See generally* Dismiss Reply/Eastport.

[18] As noted above in discussing the legal standard applicable to motions to dismiss, a court may consider documents referenced in a complaint without converting a motion to dismiss into a motion for summary judgment, even if those documents are not physically appended to the complaint.  *See, e.g., Beddall v. State St. Bank & Trust Co*., 137 F.3d (*continued on next page*)

## B.  Discussion

### 1.  Splitting of Claims Into Two Complaints

The ECF docket contains two submissions by the plaintiff characterized by the Clerk's Office as motions to amend his Amended Complaint: (i) a letter to the court dated January 9, 2012, in which the plaintiff requested additional time to submit an amended complaint to correct deficiencies complained of by the State Defendants in their motion to dismiss, *see* ECF No. 36 at 2, and (ii) a document filed on January 26, 2012, titled Plaintiff's Motion for Leave To Amend the Complaint Pursuant to Federal Civil Procedure 15(a)(2), *see* ECF No. 39.  Neither filing was accompanied by a proposed amended complaint.

On February 21, 2012, the plaintiff filed a proposed amended complaint against the State Defendants, *see* Second Amended Complaint ("Proposed Complaint/State") (ECF No. 55), and on March 1, 2012, he filed a separate proposed amended complaint against the Eastport Defendants, *see* Second Amended Complaint as to the Eastport Healthcare Defendants ("Proposed Complaint/Eastport") (ECF No. 66).  On March 2, 2012, he filed a document titled "List of Exhibits as Material Facts" ("Exhibit List") (ECF No. 69) and 35 exhibits, *see* Exhibits (ECF No. 70).

In conjunction with the filing of the Proposed Complaint/State, the plaintiff also filed, on February 21, 2012, a motion to separate the defendants, *see* ECF No. 53, which all of the defendants opposed, *see* ECF Nos. 62, 63, 65.  By order dated May 31, 2012, I denied that motion, noting that "[t]he plaintiff's claims against both the state and private defendants arise from the same core set of facts and are otherwise interrelated" and that "[c]onsiderations of

---

12, 16-17 (1st Cir. 1998).  The plaintiff and O'Brien both have done so, *see, e.g.*, O'Brien Opposition/Amend at 4; Plaintiff Andrew Flood's Reply Memorandum to Defendant Ann Elizabeth O'Brien's Opposition to Plaintiff's Second Amended Complaint ("Amend Reply/O'Brien") (ECF No. 77) ¶¶ 1-13, and I consider it appropriate to do so, as well.

judicial economy and efficiency outweigh the stated inconvenience to the plaintiff of litigating this case simultaneously against all defendants or the asserted prejudice to him, invoked for the first time in his reply memorandum, arising from purported coordination/collusion among the defendants in defending against his claims."  ECF No. 91.

The plaintiff continues to rely on two separate proposed amended complaints, one against each group of defendants.  This alone warrants the denial of his motions to amend.  However, in an abundance of caution, I have also considered whether each proposed complaint is futile for failure to state a claim against the relevant group of defendants.  I conclude that both proposed amended complaints are indeed futile, supplying an additional basis for the denial of the plaintiff's motions to amend.

## 2.  Futility of Proposed Amended Complaints

### a.  State Defendants

The proposed complaint against the State Defendants adds a new defendant, Joseph Ponte, the commissioner of the MDOC, as well as fleshing out in greater detail the plaintiff's allegations.  *See* Proposed Complaint/State.  However, the proposed complaint is less clear than the operative Amended Complaint as to the nature of the claims brought against each defendant, and does not explain whether claims against individuals are brought in their individual and/or official capacities.  Insofar as appears, the plaintiff contends that:

1.      The MDOC violated his rights pursuant to the ADA and the Rehabilitation Act by (i) subjecting him to discrimination and disparate treatment by regarding him as being a drug addict and suffering from psychiatric disorders that the MDOC did not recognize as a legitimate, serious medical need and (ii) denying him the benefit of public programs, including probation supervision, by regarding him as a drug addict, *see id.* ¶¶ 88-90;

37

2.      The State Defendants violated his federal constitutional rights to privacy, medical treatment, freedom from cruel and unusual punishment, and freedom from arbitrary punishment, rights that he seeks to vindicate through 42 U.S.C. §§ 1983, 1985, and 1986, *see id*. ¶¶ 1, 90; and

3.      The State Defendants violated various state-law rights.  *See id*. ¶ 1.

In the body of the proposed complaint, the plaintiff also complains of violations of his right to privacy, invoking both state law and the federal Public Health Service Act.  *See, e.g*., *id*. ¶¶ 32, 76.

In addition to seeking compensatory and punitive damages and costs of suit, the plaintiff requests (i) a declaration that the acts and omissions that he describes violated his rights under the constitution and laws of the United States, (ii) a preliminary and permanent injunction ordering Love and the MDOC to stop re-disclosing information pertaining to his substance abuse and psychiatric treatment and to make a reasonable accommodation of policies to stop discriminating against inmates who are disabled, and, (iii) if possible, a new hearing to determine the suitability of his probation.  *See id*. at 14-15.

### i.   Section 1983 Claims

With respect to claimed constitutional violations for which the plaintiff seeks redress pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, the gravamen of his complaint against all State Defendants in the proposed complaint remains alleged misconduct leading to his probation revocation and re-incarceration.  *See generally* Proposed Complaint/State.  To the extent that the plaintiff complains of that misconduct, his constitutional claims are barred by *Heck*.

While the plaintiff elaborates on, and adds examples of, conduct of the MDOC post-dating his re-incarceration, for example, that the MDOC increased his custody-level status based on his substance abuse treatment medications, *see id*. ¶ 33, and barred him from access to the

courts following his recommitment, *see id*. ¶¶ 36-37, that does not salvage his constitutional claims against that entity.  As noted above, the MDOC is immune from suits pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, regardless of the relief sought.  *See, e.g., Poirier*, 558 F.3d at 97.

With respect to O'Roak, the proposed complaint, like the operative complaint, identifies no specific conduct apart from that culminating in the plaintiff's revocation of probation.  *See* Proposed Complaint/State ¶¶ 44-49.  Accordingly, any claims against O'Roak pursuant to sections 1983, 1985, and 1986 are barred by *Heck*.  In any event, the proposed complaint continues to fail to state a claim of supervisory liability against O'Roak, no facts having been pleaded tending to show that he acquiesced in or condoned conduct amounting to a constitutional deprivation by Love.  *See id*.

The plaintiff also offers little by way of new factual allegations against Love.  New allegations bearing on Love's alleged misconduct leading to and culminating in the revocation of the plaintiff's probation, *see, e.g., id.* ¶¶ 51, 56, 62, 67-68, 70, are unavailing because they run afoul of *Heck*.

The remaining new factual assertions, that Love (i) placed a letter in the plaintiff's medical file on February 10, 2010, after sending him back to prison, that contained "slanderous accusations," *id*. ¶¶ 82-83, and (ii) "intentionally inflicted physical harm by instructing Corizon not to treat the plaintiff upon his recommit[]ment" despite knowing that the plaintiff required emergency care, *id*. ¶ 84, likewise do not suffice to cure deficiencies in the Amended Complaint with respect to section 1983 claims.

As noted above, defamation is not a cognizable federal constitutional violation.  *See, e.g., Lluberes*, 663 F.3d at 23; *Calhoun*, 2011 WL 1674990, at *2.  While the plaintiff alleges that

Love instructed Corizon not to treat him, he does not allege that he sought care, while imprisoned, on any particular occasion for any particular condition, for which he was summarily rebuffed by Corizon.  *See generally* Proposed Complaint/State.  He thus fails to allege a "sufficiently serious deprivation" of essential health care to state an Eighth Amendment claim. *DesRosiers v. Moran*, 949 F.2d 15, 18 (1st Cir. 1991).

With respect to Ponte, the proposed complaint contains no concrete allegations at all. The plaintiff merely alleges, in conclusory fashion, that Ponte was aware that officers were engaging in unlawful conduct and allowed it to continue and that he had a duty to correct an alleged statewide pattern of discrimination that is ongoing under his supervision.  *See* Proposed Complaint/State ¶¶ 85-87. "These are exactly the sort of unadorned, the-defendant-unlawfully-harmed-me accusations that both [the First Circuit] and the Supreme Court have found insufficient" to state a claim of supervisory liability for purposes of section 1983.  *Feliciano-Hernández v. Pereira-Castillo*, 663 F.3d 527, 534 (1st Cir. 2011) (citation and internal punctuation omitted).

The proposed complaint accordingly is futile insofar as the plaintiff continues to seek to assert claims pursuant to 42 U.S.C. § 1983 against the State Defendants.

### ii.  ADA/Rehabilitation Act Claims

In his proposed complaint, the plaintiff attempts to address deficiencies related to his ADA and Rehabilitation Act claims by describing, in more detail, his claimed impairments and their impact on his activities, *see, e.g.*, Proposed Complaint/State ¶¶ 9-14, and alleging, for the first time, that the MDOC categorically excludes inmates with dual substance abuse/psychiatric disabilities from probation and medical treatment, *see id.* ¶¶ 18-19, 22, 24-26.

40

These alterations make no difference in the plaintiff's ability to state a claim of disability discrimination against Love, O'Roak, or Ponte.  As a matter of law, they are not amenable to suit pursuant to the ADA or the Rehabilitation Act.  *See, e.g., DeCotiis*, 842 F. Supp.2d at 363 n.5.

With respect to the MDOC, even assuming *arguendo* that the plaintiff now makes a sufficient showing that he is disabled for purposes of the ADA and the Rehabilitation Act, he does not state a plausible claim that the MDOC discriminated against him on the basis of disability.

Although he does allege, in general terms, that the MDOC systematically discriminates against inmates by "categorically recommending terminating probation supervision because of the probationers['] disability, drug addiction[,]" Proposed Complaint/State ¶ 26, he specifically alleges that the MDOC recommended terminating his probation because it disagreed that his preferred substance abuse therapy was therapeutic, *see id*. ¶ 28.  Likewise, Ralph Green, whom the plaintiff alleges "was also . . . discriminated against because of his substance abuse disability[,]" *id*. ¶ 26, avers, in relevant part, that his probation officer told him that she would have his probation revoked if he went on methadone or suboxone even though a judge had told him to seek that treatment, *see* Exh. 13-B (ECF No. 70-8) at 3.  This reflects a disagreement over treatment for substance abuse, not discrimination based on a disability of drug addiction.

Other exhibits referenced in the proposed complaint do not bolster the plaintiff's case: they tend to show that the MDOC made an individualized decision to recommend the termination of his probation, rather than following a written or unwritten disability-based categorical policy.  *See, e.g*., Exh. 10-B (ECF No. 70-15) (probation termination summary by Love); Exh. 15 (ECF No. 70-20) (Love affidavit in support of probable cause to find probation violations).  Further, the court, not the MDOC, ultimately terminated the plaintiff's probation

after conducting its own individualized assessment. *See* 17-A M.R.S.A. § 1206(6) (court must determine by a preponderance of the evidence whether an individual has inexcusably violated probation conditions).

Similarly, while the plaintiff alleges, in general terms, that the MDOC "failed to provide [him] with a reasonable accommodation of [his] substance abuse and psychiatric disabilities[,]" Proposed Complaint/State ¶ 16, "discriminated against [him] by limiting the availability of programs and activities due to [his] being dually disabled[,]" *id*., "is systematically excluding inmates with disabilities of anxiety disorders, social phobia and other psychiatric disorders from receiving the benefits of treatment[,]" *id*. ¶ 18, and "instructs Corizon, [its] medical subcontractor, not to medically treat inmates who suffer panic attacks from social phobia, agor[a]phobia, and general anxiety disorders[,]" *id*. ¶ 19, and that he "suffers greatly from being untreated[,]" including suffering "severe stomach pain, bleeding ulcers, migraines, inability to be happy, thoughts of suicide, inability to communicate, and general poor health[,]" *id*. ¶ 21, he describes no specific incident in which he requested or patently required treatment for a particular condition and such treatment was categorically denied, or he qualified for a particular prison program or activity, and it was categorically denied, *see id*. ¶¶ 8-43.  These allegations simply are too threadbare and conclusory to state a plausible claim of entitlement to relief under the ADA or the Rehabilitation Act.  *See, e.g*., *Oliveras-Sifre v. Puerto Rico Dep't of Health*, 214 F.3d 23, 27 (1st Cir. 2000) ("Appellants merely repeat on appeal the same conclusory statements contained in their complaint, providing us no basis upon which to find that the district court erred in failing to translate their allegations into specific conduct protected by the ADA.  Although we

construe appellants' claims liberally, it is not our role to conjecture whether an actionable claim lurks beneath their sketchy allegations.") (citations and footnote omitted).[19]

Beyond this, exhibits to which the plaintiff refers in his proposed complaint tend to undercut, rather than bolster, his generalized allegations of disability-based denial of prison medical treatment or programming/services, indicating that an individualized assessment was made and that mental health treatment was offered should he wish to avail himself of it, *see* Exhs. 18 (ECF No. 70-23), 25 (ECF No. 70-24).

The proposed complaint, hence, fails to make out a *Thompson*-type claim of disability discrimination. *See Thompson*, 295 F.3d at 898 n. 4 ("Title II does not categorically bar a state parole board from making an individualized assessment of the future dangerousness of an inmate by taking into account the inmate's disability. . . .  We hold only that plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform an individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories.").

### iii. Public Health Service Act Violations

To the extent that the plaintiff continues to invoke the Public Health Service Act, *see, e.g.*, Proposed Complaint/State ¶¶ 32, 76, the amendment of his complaint is futile.  As noted above, there is no private right of action pursuant to that act.  *See, e.g., Briand*, 223 F. Supp.2d at 250-51.

---

[19] The plaintiff's further allegations that the MDOC increased his custody level status based upon his substance abuse treatment medications, *see* Proposed Complaint/State ¶ 33, and excluded him from meaningful access to the courts, apparently also allegedly as a form of disability discrimination, *see id*. ¶ 34, suffer from the same flaws. They are generalized allegations that do not demonstrate a plausible claim of entitlement to relief.

Because the plaintiff has split his claims into two separate proposed amended complaints and, in any event, his proposed complaint against the State Defendants is futile, I deny his motions to amend to the extent that they implicate the State Defendants.

### b.  Eastport Defendants

The plaintiff's proposed complaint against the Eastport Defendants contains additional detail regarding those defendants' alleged transgressions as well as the plaintiff's claimed impairments and their impact on his ability to function.  *See generally* Proposed Complaint/Eastport.  Yet, the proposed complaint is less clear than the operative Amended Complaint as to the nature of the claims brought against each defendant and does not indicate whether claims against individuals are brought in their individual and/or official capacities. Nonetheless, insofar as appears, the plaintiff contends that:

1.      Eastport violated his rights pursuant to the ADA and the Rehabilitation Act, subjecting him to discrimination and disparate treatment because it regarded him as a drug addict, including failing to treat his "serious medical needs" stemming from panic attacks and mood disorders and working in concert with the MDOC to fabricate a means to re-incarcerate him, *see id.* ¶¶ 82-83;

2.      The Eastport Defendants violated his federal constitutional rights to privacy, medical treatment, freedom from cruel and unusual punishment, and freedom from arbitrary punishment, rights that he seeks to vindicate through 42 U.S.C. §§ 1983, 1985, and 1986, *see id.* ¶¶ 1, 84; and

3.     The Eastport Defendants violated the Maine Civil Rights Act by threatening incarceration to force the plaintiff to waive rights and subjecting him to "cruelly unusual disparate treatment" at their facility.  *See id*. ¶ 85.[20]

In addition to seeking compensatory and punitive damages and costs of suit, the plaintiff seeks a declaration that the acts and omissions he describes violated his rights under the constitution and laws of the United States and an injunction ordering Eastport to make "reasonable modifications" to its policy of retaliating against disabled individuals.  *See id*. at 14.

O'Brien opposes the motions to amend on several grounds, including the failure of the proposed complaint to correct the deficiencies in the plaintiff's first two complaints.  *See generally* O'Brien Opposition/Amend.[21]

### i.   Section 1983 Claims

In his proposed complaint, the plaintiff alleges that the Eastport Defendants violated his federal constitutional rights with respect to both the medical treatment provided, or not provided, to him and the release of his confidential medical information.  *See* Proposed Complaint/Eastport ¶¶ 82-84.[22]

---

[20] The plaintiff also alleges, in the body of his proposed complaint, that one or more of the Eastport Defendants violated 42 U.S.C. § 290dd, the Public Health Service Act.  *See, e.g.*, Proposed Complaint/Eastport ¶¶ 54-55, 79.

[21] In his reply to O'Brien's opposition to his motions to amend, the plaintiff states that he wishes to assert a newly discovered claim pursuant to 21 U.S.C. § 801.  *See* Amend Reply/O'Brien at 7-8.  He asserts that the MDOC, acting through O'Brien, violated section 801 by excluding him from medical treatment.  *See id*. at 7.  The plaintiff cannot bootstrap a new cause of action into his proposed complaint by mentioning it for the first time in a reply memorandum in support of a motion to amend.  In any event, the cited statute, which sets forth congressional findings regarding controlled substances, has nothing to do with O'Brien's decisions regarding which medications to prescribe the plaintiff, regardless of whether those decisions were influenced by the MDOC.  *See* 21 U.S.C. § 801.

[22] Insofar as appears, the plaintiff complains that the Eastport Defendants were deliberately indifferent to his serious medical needs in violation of his Fifth Amendment right to seek medical treatment, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fourteenth Amendment right to be free from arbitrary punishment.  *See* Proposed Complaint/Eastport ¶ 84.  Regardless of whether the Fifth, the Eighth, or the Fourteenth amendment applies, the standard is the same.  *See, e.g., Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."); *Roseboro v. Gillespie*, 791 F. Supp.2d 353, 381 n.33 (S.D.N.Y. 2011) ("The due process clause of the Fifth Amendment applies to claims by pre-trial detainees of excessive force and of (*continued on next page*)

### (a)  State Actors

As a threshold matter, the proposed section 1983 claims against the Eastport Defendants are futile because the plaintiff still does not make out a plausible claim that these defendants are "state actors" for purposes of section 1983.  The plaintiff adds an allegation that Eastport receives federal funding.  *See* Proposed Complaint/Eastport ¶ 33.  However, as noted above, that does not suffice to show that an entity or its employees are state actors.  *See, e.g., Mele*, 609 F. Supp.2d at 257.[23]

In any event, even if Eastport, Murphy, O'Brien, and/or Barbee were state actors, for the reasons discussed below, the proposed complaint does not cure deficiencies with respect to claimed constitutional violations regarding medical care or state a plausible claim of entitlement to relief with respect to a new allegation of violation of federal constitutional privacy rights.

### (b)  Medical Treatment

The proposed complaint continues to fall short of stating a claim of violation by the Eastport Defendants of any constitutional right to be free from cruel and unusual punishment with respect to such care in that the plaintiff was not in custody, but rather on probation, during the relevant time period.  *See* Proposed Complaint/Eastport ¶¶ 12, 27-28; *see also, e.g.*, *Luna*, 2006 WL 1517747, at *3-*4.

---

deliberate indifference to medical needs.  Whether Roseboro's claims arise under the Fifth or Eighth Amendment, the analysis remains the same.") (citations and internal quotation marks omitted).

[23] Nor does the proposed complaint make out a plausible claim that the individual Eastport Defendants were "state actors" for purposes of section 1983 by virtue of a conspiracy to deprive the plaintiff of federally protected rights. Despite new allegations, the gravamen of the proposed complaint remains that the Eastport Defendants (i) forced the plaintiff to sign releases of information permitting Love and the MDOC to access his confidential treatment information and (ii) allowed Love and the MDOC to influence their treatment decisions with respect to the plaintiff, for example, as to which anti-anxiety medications he would be prescribed and whether he would be permitted to complete a DSAT treatment program.  *See, e.g.*, Proposed Complaint/Eastport ¶¶ 27-29, 43-45, 69-70, 80.  As noted above, the plaintiff was required as a condition of probation to complete substance abuse and psychological counseling/treatment to Love's satisfaction and to sign releases permitting Love and the MDOC to access his confidential treatment information.  *See* Probation Conditions.  Against that backdrop, the proposed complaint, like the Amended Complaint, offers nothing but naked assertions that the individual Eastport Defendants conspired with the MDOC and Love to deprive the plaintiff of federally protected rights.

In addition, as O'Brien argues, *see* O'Brien Opposition/Amend at 3-4, the allegations of the proposed complaint, together with exhibits referenced therein, make clear that the plaintiff's claims that she was "deliberately indifferent" to his serious medical needs, *see* Proposed Complaint/Eastport ¶ 63, boil down to a disagreement with her refusal to continue to prescribe him addictive medications in view of his history of drug abuse, *see* Exhs. 6 (ECF No. 70-11), 26 (ECF No. 70-25), 28 (ECF No. 70-27) at 8-9. This type of disagreement does not amount to a constitutional violation. *See, e.g., Ruiz-Rosa*, 485 F.3d at 156 ("[S]ubstandard care, malpractice, negligence, inadvertent failure to provide care, and disagreement as to the appropriate course of treatment are all insufficient to prove a constitutional violation.").

The same is true with respect to new allegations in the proposed complaint regarding asserted constitutional violations in the provision of health care treatment by Eastport, Murphy, and Barbee. These allegations, as well, center on those defendants' purported deliberate indifference to the plaintiff's serious medical needs, including "unchecked panic attacks[,]" by virtue of their refusal, in view of his drug abuse history, to continue prescribing benzodiazepines to manage his anxiety symptoms. *See, e.g*., Proposed Complaint/Eastport ¶¶ 12-13, 16, 22-23, 25-27, 32, 35, 38, 74-77.

### (c)  Disclosures of Information

This court has concluded that "there is a Fourteenth Amendment right to privacy that protects private medical information from unjustified disclosure by governmental actors." *Doe v. Magnusson*, No. Civ. 04-130-B-W, 2005 WL 758454, at *10 (D. Me. Mar. 21, 2005) (rec. dec., *aff'd* Apr. 14, 2005). Yet, "these interests can be curtailed by a policy or regulation that is shown to be reasonably related to legitimate penological objectives of the corrections system[.]" *Id*. (citation omitted).

47

As a threshold matter, the proposed complaint fails, for the reasons stated above, to raise a plausible claim that the Eastport Defendants were "state" or "governmental" actors. For this reason alone, it is futile with respect to any constitutional privacy violation claim.

Moreover, the proposed complaint alleges, in essence, that the Eastport Defendants (i) forced the plaintiff to sign releases of his confidential information to Love and the MDOC and (ii) disclosed information to Love, the MDOC, the state prosecutor's office, and the court. *See* Proposed Complaint/Eastport ¶¶ 28-29, 34, 47-50, 52-53, 55, 71, 74, 77, 79-80; *see also* Exhs. 9 (ECF No. 70-14), 10 (ECF No. 70-16), 27 (ECF No. 70-26) at 2-3. Yet, as a condition of his probation, the plaintiff was required to consent to releases of "any counseling/treatment information" to Love, the district attorney, and the court. *See* Probation Conditions. The court, accordingly, deemed these conditions reasonably related to a legitimate penological objective of the corrections system. In the circumstances, any conduct by the Eastport Defendants forcing the plaintiff to sign releases to the MDOC, Love, or the court, or releasing confidential information to those entities or individuals, does not, as a matter of law, constitute a violation of the plaintiff's federal constitutional right to privacy.

For all of these reasons, the proposed complaint is futile insofar as it seeks to assert section 1983 claims against the Eastport Defendants.

### ii. ADA, Rehabilitation Act Claims

The proposed complaint, like the Amended Complaint, continues to fail to state a claim against:

1.     Any of the Eastport Defendants pursuant to Title III of the ADA, in that, although the plaintiff does seek injunctive relief against Eastport, he lacks standing to do so in view of the fact that he does not indicate that he is likely ever to seek or receive care from that entity again.

*See, e.g., Goodwin*, 436 F.3d at 50; *Dudley*, 333 F.3d at 305; *Louisiana Counseling*, 2011 WL 3273548, at *4;

2.     O'Brien, Murphy, or Barbee in their individual capacities pursuant to either Title II of the ADA or the Rehabilitation Act, as individuals are not amenable to suit thereunder.  *See, e.g., DeCotiis*, 842 F. Supp.2d at 363 n.5.

3.     Eastport pursuant to Title II of the ADA because nothing in the proposed complaint indicates that it is a "public entity," defined as "any State or local government" or "any department, agency, . . . or other instrumentality of a State . . . or local government."  *B.N. ex rel. A.N. v. Murphy*, Cause No. 3:09-CV-199-TLS, 2011 WL 5838976, at *5 (N.D. Ind. Nov. 16, 2011) (quoting 42 U.S.C. § 12131(1)); *see also, e.g., Wynott*, 2008 WL 2061385, at *2; or

4.     Any of the Eastport Defendants pursuant to the ADA or the Rehabilitation Act, because the well-pleaded allegations of the complaint, together with exhibits referenced therein, show that the crux of the plaintiff's complaint against them is a disagreement over prescribed medications and/or treatments.  That does not amount to discrimination based on disability.  *See, e.g., Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *9 (N.D.N.Y. Mar. 30, 2010) (rec. dec., *aff'd* Apr. 21, 2010) ("[T]he ADA and RA [Rehabilitation Act] afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.") (citation and internal quotation marks omitted); *see also, e.g., Cushing v. Moore*, 970 F.2d 1103, 1109 (2d Cir. 1992) (patients of drug treatment clinic failed to state claim under Rehabilitation Act based on termination of "take-home" methadone treatment because "section 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in

question.  As a corollary, therefore, § 504 must allow a federally-funded program, such as the clinic here, the ability to consider a patient's handicap where that handicap gives rise to, or at least contributes to, the need for services.") (citation and internal quotation marks omitted).

The proposed complaint, accordingly, is futile insofar as it seeks to assert ADA and Rehabilitation Act claims against any of the Eastport Defendants.

### iii.  Public Health Service Act Violations

To the extent that the plaintiff continues to invoke the Public Health Service Act, *see, e.g.*, Proposed Complaint/Eastport ¶¶ 54-55, 79, the amendment of his complaint is futile.  There is no private right of action pursuant to that act.  *See, e.g., Briand*, 223 F. Supp.2d at 250-51.

Because the plaintiff has split his claims into two separate proposed amended complaints and, in any event, his proposed complaint against the Eastport Defendants is futile, I deny his motions to amend to the extent that they implicate the Eastport Defendants.

### III.  Conclusion

For the reasons that follow, I **DENY** the Eastport Defendants' motion to substitute (ECF No. 82), **MOOTING** the plaintiff's request for discovery bearing on that motion (ECF No. 87), **DENY** the plaintiff's motions to amend his complaint for a third time (ECF Nos. 36 and 39), and recommend that the court (i) **GRANT** the defendants' motions to dismiss the operative Amended Complaint (ECF Nos. 26, 41, and 83) for failure to state a claim with respect to any federal cause of action and (ii) **DECLINE** to exercise supplemental jurisdiction over the plaintiff's state-law claims, dismissing those claims without prejudice.  The adoption of that recommendation would **MOOT** the plaintiff's P/I motion (ECF No. 32), the State Defendants' objection to materials filed in support of that motion (ECF No. 74), and the plaintiff's motion for discovery with respect to John and Jane Doe (ECF No. 89).

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 24th day of August, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge